UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULIAN CURRY,<br><br>                  Plaintiff,<br><br>  v.<br><br>TACOMA POLICE DEPARTMENT,<br>LAKEWOOD POLICE DEPARTMENT, and<br>K-9 UNIT,<br><br>                  Defendants. | No. C10-5034 RJB/KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted For:  March 4, 2011** |

Before the court is the motion for summary judgment of the City of Tacoma.  ECF No. 31.  Plaintiff, Julian Curry, has filed no response in opposition.  His failure to do so may be viewed by the court as an admission that the motion has merit.  CR 7(b)(2).

In a Report and Recommendation dated February 2, 2011, this court recommended that the motion for summary judgment of Defendants City of Lakewood, Lakewood Police Department and the Lakewood Police Department K-9 Unit be granted and that Plaintiff's claims against them be dismissed with prejudice.  ECF No. 33.

Having viewed the motion of the City of Tacoma, supporting affidavit, and balance of the record, the court recommends that its motion for summary judgment be granted.

**STATEMENT OF FACTS**

The statement of facts contained in this court's Report and Recommendation dated February 2, 2011 (ECF No. 33, pp. 1-7) is repeated here for the convenience of the parties and the District Court.

REPORT AND RECOMMENDATION - 1

On January 26, 2008, Plaintiff Julian Jay Curry was arrested in Tacoma, Washington. He was charged with second degree assault, attempting to elude a pursuing police vehicle, attempted residential burglary and escape in the third degree. ECF No. 24, p. 4. Mr. Curry pleaded guilty on January 26, 2010, to assault in the second degree and attempting to elude a pursuing police vehicle. ECF No. 24. In his guilty plea, Mr. Curry stated:

> On 1/26/08 in Pierce County, Washington I drove my car recklessly as I attempted to outrun a marked police car which had activated lights and sirens to pursue me and ordered me to stop. I knew the police officer wanted me to pull over and stop. During the course of this incident I drove my car at TPD officer Karl. I wanted to frighten him. I would not have hit him but I certainly used my car to threaten him and create the apprehension that I would use my car against him. I am very remorseful of my conduct.

ECF No. 24, p. 13.

A summary of the occurrence is set forth in the declaration of deputy prosecuting attorney Philip K. Sorensen dated February 13, 2008, which was filed in connection with a determination of probable cause:

> That in Pierce County, Washington, on or about the 26th day of January, 2008, the defendant, JULIAN JAY CURRY, did commit the crime of assault, attempting to elude a police vehicle, attempted burglary and escape.
>
> On the above date at 0154 hours Tacoma Police responded to a residence in the 5400 block of South Asotin Street regarding a burglary in progress. When officers arrived they noted that a man, later identified as CURRY, who matched the description of the suspect was getting into a vehicle parked in front of the victim residence.
>
> As officers approached CURRY got into the vehicle and accelerated past one patrol car and directly at a patrol car occupied by Sgt. C. Karl. Sgt. Karl was forced to take evasive action to avoid a head on collision. CURRY matched the officer's efforts to evade and maintained a collision course. CURRY narrowly missed Sgt. Karl's car and sped off.  Officers pursued and after a several block chase on residential streets at speed approaching 75 miles per hour CURRY'S car was disabled by police tactical driving. CURRY was removed from the car and initially failed to submit.  A K-9 dog was deployed CURRY was subdued.

REPORT AND RECOMMENDATION - 2

      CURRY was transported to a local trauma center for treatment of his wounds. CURRY was admitted to the hospital subject to a police hold.

      Officer spoke with victim homeowner C. Sullivan. Sullivan reported that she and CURRY are involved in a dispute over money. CURRY was at her residence apparently to collect on a debt. Sullivan believed there was a payment plan in place. CURRY was outside the Sullivan back door trying to gain entry by banging on the door. Officers and Sullivan noted that the door was marked as if it had been kicked by a shoe several times. Sullivan verified that the shoe prints were fresh.

      CURRY walked away from the hospital and remains at large. A warrant is being sought for his arrest.

ECF No. 24, p. 15.

      Several Tacoma and Lakewood police officers were involved in Mr. Curry's arrest. The court has been provided with the Declarations of Officers James D. Syler, Sgt. Christopher Karl, Daniel Hensley, and Jennifer Strain, to which are attached their police reports prepared on the day of the incident. ECF Nos. 26-29.

      Officer James D. Syler led the police in their pursuit of Mr. Curry during the high speed chase. ECF No. 26. Officer Syler is a member of the K-9 Unit of the Lakewood Police Department. ECF NO. 26, p. 1. The K-9 Unit assists the patrol division in the location of suspects and evidence and provides protection or backup for line officers. *Id.* Officer Syler states that dog handlers in the K-9 unit attend a minimum of 400 hours of training before handling a dog on the streets. Before going into service, police dogs are also certified by the Washington State Criminal Justice Training commission. *Id.*, p. 2.

      Officer Syler was finishing a call in Tacoma when he heard a radio report that a burglary suspect, later identified as Julian Curry, was fleeing on East 56th street in a sport utility vehicle (SUV). When he saw the SUV that he believed was being driven by the fleeing suspect, Officer Syler followed in his patrol car. His was the first car behind Mr. Curry's car. The chase

REPORT AND RECOMMENDATION - 3

involved speeds of more than 75 miles per hour. *Id.* When Mr. Curry had to brake and turn his car to avoid striking a train crossing the 600 block of South 56th Street, Officer Syler used his patrol car to perform the pursuit intervention technique (PIT)[1] on Mr. Curry's car. When Mr. Curry's car came to a stop, Officer Syler got out of his patrol car, removed his service revolver from its holster and pointed his weapon at Mr. Curry. He repeatedly ordered Mr. Curry to lie down on the ground. Mr. Curry refused to comply and instead, advanced on Officer Syler. *Id.*

After he holstered his service revolver, Officer Syler used a front kick to try to knock Mr. Curry to the ground and then he pulled Mr. Curry to the ground by his shirt. Mr. Curry went down to his hands and knees but still refused to go all the way to the ground. Officer Syler ordered Mr. Curry several times to get on the ground but Mr. Curry refused and continued to resist. ECF No. 26, p. 3.

Mr. Curry continued to put up a violent struggle after Officer Syler took him to the ground. Officer Syler was aware that Sgt. Christopher Karl of the Tacoma Police Department was nearby, but Sgt. Karl had to leave the scene to stop the female passenger in Mr. Curry's vehicle from driving the car into them or away from the scene. When Officer Syler realized that Sgt. Karl was unavailable, he used a remote control to open the back of his patrol car so that Astor, his K-9 dog, could come to his assistance. Astor immediately got of the patrol car and bit and held on to Mr. Curry's leg. *Id.* Mr. Curry still put up a significant struggle as Astor was biting on his leg. Officers Hensely and Strain assisted Officer Syler in handcuffing Mr. Curry. ECF No. 29, p. 6. Mr. Curry was then taken into custody by Tacoma Police and medical aid was called to the scene. ECF No. 26, p. 4.

---

[1] The PIT maneuver is discussed in *John v. Berry*, 469 F.Supp.2d 922 (W.D.Wash. 2006). "The PIT maneuver has been defined to be 'a driving technique designed to stop a fleeing motorist safely and quickly by hitting the fleeing car at a specific point on the vehicle, which throws the car into a spin and brings it to a stop.'" 469 F.2d at 935-36, *quoting Harris v. Coweta County*, 433 F.3d 807, 816-17 (11th Cir. 2005).

REPORT AND RECOMMENDATION - 4

Officer Syler estimates that Astor's teeth were biting on Mr. Curry's leg for 15 to 20 seconds before he gave the command to Astor to let go of Mr. Curry's leg. *Id.*, p. 3.  As soon as Officer Syler ordered Astor to let go of Mr. Curry's leg, he did so. *Id.*, pp. 3-4. Officer Syler states that he was proud of the way Astor responded. *Id.*, p. 4.  If Astor had not assisted him, Office Syler believes he would have had to deal with Mr. Curry in some other way, which may have included the use of deadly force.  Officer Syler did not know whether Mr. Curry was armed and he was afraid that Mr. Curry would use a weapon against him or remove Officer Syler's service revolver from his holster and use it against him. *Id.*, p. 5.  Mr. Curry is a large man, over 6 feet tall and at the time of his arrest, weighed over 300 pounds.  ECF No. 26, p. 10.

Other officers on the scene confirm that Mr. Curry was resisting arrest.  When Officer Daniel Hensley, a police officer with the Tacoma Police Department, was dispatched to the possible burglary in progress, he saw Mr. Curry get into the driver's seat of the white Chevy Tahoe.  ECF No. 28, p. 10.  Mr. Curry quickly closed the door when he noticed Officer Hensley and accelerated quickly passed Officer Hensley's marked patrol car in the opposite direction. *Id.* Officer Hensley watched through his rear view mirror as the vehicle went up onto the west planting strip and came within inches of striking Sgt Karl's marked patrol car. *Id.*  Sgt. Karl got behind Mr. Curry's vehicle in pursuit, while calling out direction of travel, which was eastbound on South 56th St. *Id.*  By the time Officer Hensley caught up, Officer Strain and Officer Syler were also engaged in the pursuit.  All pursuing officers had overhead emergency lights and audible sirens activated.  Mr. Curry was driving at high rates of speed.  He was forced to slow down when a train crossed East 56th Street in the 600 block. *Id.*

Sgt. Karl had arrived at the scene of the attempted burglary within a few minutes of the initial dispatch call.  His patrol vehicle was fully marked and his vehicle's "wig-wag" lights were

REPORT AND RECOMMENDATION - 5

activated. ECF No. 27, p. 6. When he arrived, Mr. Curry and his passenger were in a white Tahoe in front of the residence. Sgt. Karl began to pull his patrol car to the left of Officer Hensley's patrol vehicle when Mr. Curry accelerated his car at a fast speed towards his patrol car. Sgt. Karl quickly accelerated and pulled his vehicle to the right, eastwards, to avoid a head on collision. Mr. Curry's vehicle also jerked to the east and came within inches of striking the driver's door on Sgt. Karl's vehicle. Sgt. Karl continued to accelerate in an eastwards direction to avoid a collision and possible serious injury. Mr. Curry then fled southbound on South Asotin at a high rate of speed. Sgt. Karl advised dispatch of the direction of travel and the pursuit continued eastbound on South 56th at a high rate of speed. Sgt. Karl observed Officer Syler get in behind Mr. Curry's vehicle and take primary in the pursuit. As the pursuit continued eastbound on South 56th, Sgt. Karl continued to update dispatch. Sgt. Karl lost sight of the vehicles in the 300 block of East 56th St. As he crested the hill, Sgt. Karl saw Officer Syler PIT Mr. Curry's vehicle, which came to a complete stop at the intersection of East 56th and D Streets. *Id.*

Sgt. Karl confirms that Officer Syler repeatedly ordered Mr. Curry to get on the ground and that Mr. Curry refused and instead, advanced toward Officer Syler. Sgt. Karl saw Officer Syler take Mr. Curry to the ground by pulling him down by his shirt. Mr. Curry went down to his knees but refused to go to the ground. As Sgt. Karl ran over to assist Officer Syler, he looked back at Mr. Curry's car and saw the female passenger jump into the driver's seat of the running vehicle. He saw her grab the gear shifter and it appeared she was trying to put the vehicle in drive. Sgt. Karl left Officer Syler and ran to Mr. Curry's vehicle, fearing that if she put the vehicle in drive, she could use it as a weapon to strike Officer Syler and him. Sgt. Karl ordered her out of the car, but she refused and continued to pull down on the gear shift. Sgt. Karl pulled

REPORT AND RECOMMENDATION - 6

her out of the driver's seat by her shirt and took her to the ground.  Officer Hensley arrived and he and Sgt. Karl were able to handcuff her after a short struggle.  *Id.*, p. 6.  Officer Hensley, who assisted in handcuffing both Mr. Curry and his female passenger, states that both of them smelled of intoxicants.  ECF No. 28, p. 10.

Sgt. Karl noted in his report that Officer Syler responded to assist the Tacoma Police under the K9 metro agreement.  ECF No. 27, p. 6.  According to Sgt. Karl, the use of K9 direct deployment was necessary, reasonable and within Tacoma Police guidelines because Mr. Curry was actively resisting arrest by pulling away from Officer Syler and refusing to put his hands behind his back.  Officer Syler deployed Astor on an actively resistant suspect.  After Astor bit Mr. Curry's lower right leg, several officers were finally able to get Mr. Curry under control and eventually handcuffed.  *Id.*

Officer Jennifer Strain, a police officer with the Tacoma Police Department, was in the 5400 block of Pacific talking to a witness about a robbery when she heard units being dispatched to a burglary in progress.  ECF No. 29, p. 6.  She saw the vehicles travelling eastbound through the intersection at 56th and Pacific at a high rate of speed and she got into her patrol vehicle to assist.  As she was coming down the hill east on 56th, she saw that Mr. Curry was walking towards Officer Syler, who had Mr. Curry at gun point.  She watched Officer Syler take Mr. Curry to the ground and it appeared to her that Mr. Curry was still struggling with Officer Syler.  *Id.*  Officer Strain also saw Sgt. Karl pull the female passenger from the vehicle and on to the ground.  She could see that Mr. Curry was still struggling against Officer Syler and that Officer Syler had released his dog from the vehicle.  *Id.*

REPORT AND RECOMMENDATION - 7

## STANDARD OF REVIEW

Summary judgment will be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those positions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupportable claims . . . ."  *Celotex*, 477 U.S. at 323-24.  It is "not a disfavored procedural shortcut," but is instead the "principal tool by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the court must not make credibility findings.  *Id*. at 255.  The non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the nonmoving party's favor.  *Id*. at 252.  The court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9thCir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or

deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the nonmoving party to produce evidence sufficient to support a jury verdict in his favor. *Id*. at 256-57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324. However, the court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001), quoting *Forseberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988). Instead, the "party opposing summary judgment must direct [the court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

**DISCUSSION**

To state a claim under 42 U.S.C. § 1983, the defendant must be a person acting under color of state law; and his conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), cert. denied, 449 U.S. 875 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed.

Under 42 U.S.C. § 1983, a plaintiff cannot recover from a municipality unless he shows that "the action that is alleged to be unconstitutional implements or executes a policy statement,

REPORT AND RECOMMENDATION - 9

ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers" and causes the constitutional violation." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1977). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "[A] municipality cannot be held liable under § 1983 and a plaintiff may not recover under § 1983 on a *respondeat superior* theory." *Id.*

When a claim of municipal liability is premised on an alleged failure to act (such as an alleged failure to train or supervise), the plaintiff must prove: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional deprivation. *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 835 (9th Cir. 1996) (standards have been applied to inadequate training, supervision, hiring and monitoring claims). *See also, City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989) (a *Monell* plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.").

Mr. Curry has not alleged any fact nor produced any evidence to support a claim that a "policy or custom" of the City of Tacoma caused him harm. During his deposition, Mr. Curry testified that when he was on the ground and the officers were on top of him, they were "roughing [him] up." He felt that the officers were using unnecessary force when he was on the ground and they were taking him into custody. ECF No. 32, Exh. 4, p. 43 (CM/ECF pagination). However, Mr. Curry has not established how much force and what type of force was used by the Tacoma City police officers during his arrest. He has also failed to identify the specific policy or

REPORT AND RECOMMENDATION - 10

custom of the City of Tacoma Police Department from which the alleged excessive force stemmed.  Absent proof of a custom or policy that caused his injury, Mr. Curry's § 1983 claims against the City of Tacoma must be dismissed.  Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted.

## CONCLUSION

Based on the foregoing, the undersigned finds and recommends that Defendant's motion for summary judgment (ECF No. 31) be **GRANTED** and Plaintiff's claims against the City of Tacoma be **DISMISSED WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 4, 2011,** as noted in the caption.

**DATED** this  14th  day of February, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11